UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

INC NAUTICAL, L.P., §
§
§
Plaintiff, §
§
v. § CIVIL ACTION NO. 4:17-cv-00268
§
PAYCHEX, INC., §
§
Defendant. §

## AFFIDAVIT OF AMY L. FICI IN SUPPORT OF
## PAYCHEX, INC.'S MOTION TO COMPEL ARBITRATION

1.      "My name is Amy L. Fici. I am over 21 years of age, am of sound mind, and am capable of making this declaration, and am fully competent and authorized to testify to the matters stated herein. All of the facts stated in this declaration are true and correct and were either collected by corporate personnel and other persons with knowledge of the facts, or are within my personal knowledge as an agent of Paychex, Inc. ("Paychex")

2.      "I am Corporate Counsel for Paychex and am authorized to make this declaration on its behalf. I have reviewed Plaintiff's Original Petition and Request for Disclosure ("Petition") filed by Plaintiff INC Nautical, L.P. ("Plaintiff") in this case.

3.      "Paychex is a leading provider of integrated human capital management solutions for payroll, human resources, retirement and insurance services.

4.      "On March 12, 2011, Paychex and Plaintiff entered into Payroll Processing Services Agreement. A true and correct copy of this Agreement is attached hereto as Exhibit A-1. The Client Number and Federal ID Number have been redacted.



5.      "On February 13, 2012, Paychex and Plaintiff entered into another Payroll Processing Services Agreement. A true and correct copy of this Agreement is attached hereto as Exhibit A-2. The Client Number has been redacted.

6.      "During all of the timeframes discussed in the Petition, Paychex transacted business across state lines, in person, by telephone, e-mail, and internet. Paychex's interstate business included contact between Paychex's headquarters in Rochester, New York and Plaintiff located in Texas. All of Paychex's servers, which house all of its applications and client data, are located in New York. The payroll processing services for Plaintiff are performed in Rochester, New York, while most of the data entry was performed at the local branch in Texas.

7.      "If this matter is ordered to arbitration, Paychex will not unnecessarily impede the progress of that proceeding."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2017.

Amy L. Fici

## Step 1: Read and complete this form.

**Paychex Payroll Processing Services Agreement**

Company Name  INC  Nautical  LP

Office/Client Number

Federal ID Number

This Paychex® Payroll Processing Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated in accordance with its provisions.

1. **Services.** Client employs Paychex to provide the Payroll Processing services, and any optional services selected by Client below (collectively "Services"). Services are described in the Product Terms and Conditions section of this Agreement. Paychex will not commence any of the Services until Paychex receives all documents necessary to begin each of the Services and notifies Client of the date Paychex will commence each of the Services ("Service Effective Date"). Client acknowledges that each of the Services may have separate Service Effective Dates. Until the Service Effective Date, Client will continue to provide for itself the Services requested of Paychex. Paychex assumes no responsibility for Services prior to the Service Effective Date or for Services declined by Client.

**Payroll Processing Services.** The Payroll Processing Services includes the Services set forth below as described in the Product Terms and Conditions section of this Agreement.

- **Payroll Processing**
- **Taxpay®**
- **Direct Deposit**
- **Readychex®** ☒ -OR- Check Signing ☐ (check one)
- **Check Insertion**
- **Check Logo Service**

- **Paychex® Online Reports**
- **New Hire Reporting**
- **HR Library**
- **Labor Posters**
- **General Ledger Report**
- **Employee Access Online (EAO)**

**Declined Payroll Processing Services.** Client declines the Services initialed below. Client is solely responsible for performing the declined Services.

_____ **Initial here to DECLINE Taxpay®**

_____ **Initial here to DECLINE Direct Deposit**

**Optional Services.** Initial below to select additional Services. The optional Services are not part of the Payroll Processing Services and Client acknowledges it must pay separately for each selected Service. The optional Services are described in the Product Terms and Conditions section of this Agreement.

| | | |
|---|---|---|
| _____ **State Unemployment Insurance Service (SUIS)** | _____ **General Ledger Reporting Service** | _____ **Time Off Accrual Service (TOA)** |
| _____ **Workers' Compensation Report Service** | _____ **Premium Only Plan (POP)** | _____ **Garnishment Payment Service** |
| _____ **Workers' Compensation Payment Service** | _____ **Paychex® Employee Screening Services** | _____ **COBRA Administration** |

Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services, nor is Paychex a fiduciary of Client or the employer or joint employer of Client's employees. Paychex will not be responsible for Client's compliance with, nor will Paychex provide legal or other financial advice to Client, with respect to federal, state, or local statutes, regulations, or ordinances, including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

Client understands that this Agreement (Rev. 11/10) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions set forth in sections 1-24 of this Agreement.

Authorized Officer's Name   Scott   Boomaster        Title   President

Authorized Officer's Signature   _____        Date   3-12-11



EXHIBIT
A-1

2. **Client Contacts.** Client will designate payroll contacts that will provide Paychex with information and directives necessary for Paychex to perform the Services (collectively "Client Information"). Client is responsible for the accuracy of any Client Information provided by payroll contacts and/or Client.

3. **Client Information.** Client will execute and/or provide all documentation that Paychex requires to perform its responsibilities under the Agreement including, where necessary, taking all corporate action. Client acknowledges that Paychex may be required to obtain documents necessary to verify the identity of Client pursuant to applicable federal and/or state statutes or regulations. Client will provide Paychex with all necessary Client Information pertaining to Client's employees at least two (2) banking days prior to a payroll check date. **Client acknowledges that Client is responsible for any delayed remittance of wages, taxes, and garnishments, and additional processing fees incurred as a result of its failure to provide Client Information at least two (2) banking days prior to a payroll check date. Paychex shall not be required to obtain authorization from Client to act on Client Information.**

4. **Reliance on Client Information.** Paychex will not be responsible for errors that result from Paychex' reliance on Client Information.

5. **Review Reports.** Client will review all reports and documents provided or made available by Paychex and inform Paychex of any inaccuracies within three (3) business days of receipt or availability.

6. **Software Licenses.** Client has received, or may receive, certain computer software relating to Services (collectively "Software"). Client agrees that in the event that it does not accept all of the terms and conditions of any and all Paychex Software, and/or third-party Software, and any and all applicable license agreements provided to Client now or in the future, Paychex will not be obligated to perform Services dependent upon the Software.

7. **Remit Reimbursement Amounts.** Client agrees to remit funds to Paychex representing the amount due to pay Client's employees, remit taxes, or pay garnishments ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

8. **Payment of Fees.** Client will pay all fees, including, but not limited to, fees for all Paychex Services each pay period through an EFT or such other method as required by Paychex when due (collectively "Fees"). Minimum monthly Fees are due in the event Client fails to process a payroll or whose payroll fails to meet the minimum monthly charge during the month. Fees include minimum monthly, insufficient funds, and premium processing fees. Paychex' Fees are subject to change upon thirty (30) days written notification to Client. Paychex may, in its sole discretion, require a security deposit from Client, and Client waives any right to interest that may accrue on any amounts, including, but not limited to, Reimbursement Amounts, Fees, and security deposits received by Paychex.

9. **Electronic Funds Transfer.** If Paychex requires payment of Fees or Reimbursement Amounts (collectively "Amounts Due") through an EFT, Client (i) will execute all documentation needed by Paychex to originate EFT transactions and to verify availability

of funds in Client's bank account; (ii) agrees that the funds representing the Amounts Due will be on deposit in Client's bank account in collectible form and in sufficient amount on the day Paychex' EFT is to be presented ("Funding Deadline"); and (iii) authorizes Paychex to collect all Amounts Due from Client's bank account on the Funding Deadline. All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA"). Client agrees (i) to follow NACHA, as they are amended from time to time and assumes the responsibilities of an initiator of EFTs; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT. Client further agrees that it will notify Paychex, pursuant to applicable NACHA and federal regulations, if funding for Client's payroll is received from a foreign financial agency and of any employees with non-U.S. addresses.

10. **Payment by Wire Transfer or Other Method.** If Paychex requires payment of Amounts Due by a wire transfer or other method, Client agrees to provide Paychex with all information necessary to confirm receipt of the payment prior to the Funding Deadline.

11. **Insufficient or Nonconfirmed Funds.** If sufficient funds are not available on the Funding Deadline, Paychex may take such action to collect Amounts Due including, but not limited to, reissuance of the EFT and assessing insufficient fund Fees. **Client acknowledges that Client is responsible for any delay in remittance of wages, garnishments, or taxes if Paychex is unable to confirm receipt of funds prior to the Funding Deadline.**

12. **Client's Default.** In the event of a Client default, Paychex may, at its sole option, terminate the Agreement or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances or overpayments made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due including, but not limited to, attorneys' fees (including in-house counsel), court, and arbitration costs.

13. **Refund/Adjustment/Overpayment.** Client agrees that Paychex may apply any balances it is holding for Client to Amounts Due owed to Paychex or its affiliates. In the event Paychex remits an overpayment of payroll taxes, Paychex may, at its sole discretion, advance funds to Client. In the event Paychex advances overpayment funds to Client then Client agrees that it will reimburse Paychex for the overpayment within the sooner of five (5) days of (i) receiving the overpayment amount from the taxing authority; or (ii) being notified that the overpayment amount would be applied to an outstanding tax liability of Client; or (iii) the Agreement being terminated by either party.

14. **Termination.** Except as otherwise provided, either party may terminate the Agreement upon thirty (30) days prior written notice. Paychex may immediately terminate the Agreement, or a portion thereof, if: (i) Client becomes subject to receivership, bankruptcy, or is insolvent; (ii) Paychex, in its sole discretion,

determines that a material adverse change has occurred in the financial condition of Client; (iii) Client fails to have sufficient funds on the Funding Deadline; or (iv) Paychex determines, in its sole discretion, that any federal, state, or local legislation, regulatory action, or judicial decision adversely affects its interests under the Agreement. Termination of the Agreement will not relieve Client of any obligations set forth herein this Agreement, including, but not limited to, its payment obligations.

15. **Limit of Liability.** Paychex' sole liability and Client's sole remedy for Paychex' breach of the Agreement will be: (i) for Paychex to remit to the appropriate payee the funds received from Client; and/or (ii) for Paychex to reimburse Client or its employees for any interest or penalties assessed by taxing authorities as a direct result of Paychex' breach of the Agreement. Paychex can only be held liable for breach of the Agreement and will not be held liable for (i) any negligent act or omission by Paychex; (ii) the negligence of any other person or entity, including, but not limited to, Client and its employees or agents, or any person or entity that provides services in connection with or as a result of Paychex' performance of its obligations under the Agreement; (iii) any loss, claim, or expense arising from any information provided or modified by Client, including, but not limited to, any Client forms, handbooks, manuals, and job descriptions; or (iv) Client's breach of NACHA. **Paychex will, under no circumstances, be liable for any special, indirect, incidental, consequential, or punitive damages, including lost profits incurred by Client pursuant to this Agreement or by the transactions contemplated by it, however caused, on any theory of liability (including contract, tort, or warranty), or as a result of Paychex' exercise of its rights under the Agreement, even if Paychex has been advised of the possibility of such damages.**

16. **Copyright.** Paychex owns all rights, title, and interest, including, but not limited to, copyright, patent, trade secret, and all other intellectual property rights, in the Software and any changes, modifications, or corrections to the Software. If Client is ever held or deemed to be the owner of any copyright rights in the Software or any changes, modifications, or corrections to the Software, Client hereby irrevocably assigns to Paychex all such rights, title, and interest. Client agrees to execute all documents necessary to implement and confirm the letter and intent of this section. Client warrants to Paychex that it (i) has title or is authorized to use any symbol, logo, or mark uploaded by Client or Client's agents or printed on Client's checks (collectively "Client Material"); and (ii) has full right and authority to use Client Material, and such use does not violate any other party's rights.

17. **Confidentiality of Software.** Client acknowledges that the Software contains valuable trade secrets and confidential information owned by Paychex or third parties (collectively "Confidential Information"). Client agrees that Client, its employees, and its agents will not, directly or indirectly: (i) sell, lease, assign, sublicense, or otherwise transfer; (ii) duplicate, reproduce, or copy; (iii) disclose, divulge, or otherwise make available to any third party; (iv) use, except as authorized by this Agreement; or (v) decompile, disassemble, or otherwise analyze for reverse engineering purposes the Software or Confidential Information. Client will take appropriate action with Client's

employees and agents to satisfy its obligations under this Agreement with respect to the use, protection, and security of Confidential Information. Client will notify Paychex immediately of any unauthorized use or disclosure of Confidential Information and will cooperate in remedying such unauthorized use or disclosure.

18. **Client Confidential Information.** "Client Confidential Information" will mean the name, social security number, date of birth, address, bank, and wage information of Client and Client's employees provided to Paychex by Client. Paychex will use reasonable care to prevent the disclosure of such Client Confidential Information to any unauthorized person or entity. Paychex may disclose Client Confidential Information to its employees, affiliates, subsidiaries, agents, and contractors to: (i) perform or offer Services; (ii) offer additional products or services; (iii) perform analysis to determine Client's qualification to receive future services; and (iv) collect Amounts Due and may disclose Client's payment experiences with Paychex to credit reporting agencies and supply vendor references on Client's behalf. Paychex may also disclose Client Confidential Information (i) to its attorneys, accountants, and auditors; and (ii) pursuant to federal, state, or local law, regulation, court order, legal process, or governmental investigation. The obligations set forth in this section will not apply to any Client Confidential Information that: (i) Client has agreed is free of any nondisclosure obligations; (ii) at the time of disclosure was free of any nondisclosure obligations; (iii) is independently developed by Paychex or that Paychex lawfully received, free of any nondisclosure obligations, from a third party having the right to furnish such Client Confidential Information; or (iv) is or becomes available to the public without any breach of this Agreement or unauthorized disclosure.

19. **Indemnification.** Client will indemnify, defend, and hold Paychex and its respective officers, directors, and employees harmless from any and all claims, costs, attorneys' fees (including in-house counsel fees), and expenses resulting from or arising in connection with (i) a Client default; (ii) the use, misuse, reproduction, modification, or unauthorized distribution of Software; (iii) Client's breach of NACHA; or (iv) Client's breach of any warranty set forth in the Agreement.

20. **Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client shall be governed exclusively by the laws of the State of New York without regard to, or application of, its conflict of laws, rules, and principles, except for the arbitration agreement contained herein which shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). **Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association.** Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement. A separate neutral arbitrator must be selected and appointed for each dispute. Any dispute arising under the Agreement will be brought within two (2) years of when the claim accrued. The arbitrator will not be authorized to award exemplary or punitive damages,

Rev. 11/10

or any damages excluded in the Limit of Liability provision. The parties agree that the prevailing party in arbitration, and any subsequent judicial proceeding to enforce an arbitration award, will be awarded costs and attorneys' fees (including in-house counsel fees) and that an arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. The parties will not be permitted to bring, or participate in, and the arbitrator will not have any authority or jurisdiction to hear or decide, any claims brought as any type of purported class action, coordinated action, aggregated action, or similar action or proceeding. Each party must only bring claims against each other in their individual capacity. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex. Client waives any jurisdictional defenses and submits to the exclusive jurisdiction of the New York courts.

21. **Assignability.** The Agreement may not be assigned by Client to any third parties, other than successors, without the prior written consent of Paychex. Any assignment made without such consent will be null and void.

22. **Signature.** The parties agree that Client's signature on this Agreement may be transmitted to Paychex electronically or by facsimile. The parties further agree that such signature will have the same force and effect as if the original signature had been provided and received.

23. **Miscellaneous.** The Agreement, along with any exhibits, addendums, schedules, and amendments, contains the entire understanding of the parties and supersedes all previous understandings and agreements between the parties for the Services provided, whether oral or written. Neither party will be responsible for any delay or failure to perform obligations specified in the Agreement due to causes beyond the party's reasonable control. Client acknowledges that there have been no representations or warranties made by Paychex or Client that are not set forth in the Agreement. Paychex may modify any term of the Agreement upon thirty (30) days written notice to Client of such change and the effective date thereof. Client will be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to Paychex prior to the effective date of the change and pursuant to the Termination provisions. If any provision of the Agreement or any portion thereof is held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of the Agreement will not in any way be affected or impaired. Sections 1-23 will survive the termination of the Agreement.

24. **Product Terms and Conditions.** Client acknowledges that it will receive only the Services selected on Page 1 of this Agreement.

**Payroll Processing.** Paychex will process Client's payroll based solely on Client Information provided by Client, prepare payroll checks drawn on Client's bank account or as otherwise directed by Client in this Agreement, prepare payroll reports for each payroll processed by Client, and provide the payroll reports, checks, and/or payroll check stubs to Client for review and distribution. Paychex will prepare payroll tax returns for taxes identified on the Cash Requirements report and deliver to Client for the Client to review, sign, and file. Paychex will not be responsible for the remittance of payroll taxes, or other taxes, or for the filing of tax returns for Clients who elect not to receive the Taxpay® service.

**Taxpay®.** On or before Client's check date, Paychex will (i) process Electronic Funds Transfer (EFT) transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified on the Cash Requirements report; (ii) hold such amounts in a separate account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes which Paychex did not collect from Client. **SUI Support Service:** Paychex will provide Client with telephone support with state unemployment insurance claims, benefit charge questions, and pre-hearing preparation.

**Direct Deposit.** Paychex will process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds will be deposited to employee accounts as specified. Certain accounts may have restrictions on deposits and withdrawals. Paychex is not responsible for determining whether an account is suitable for direct deposit of requested EFT transactions.

**Readychex®.** Paychex will (i) process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees; (ii) hold such amounts in an account established by Paychex until Client's check date; and (iii) draw checks payable to Client's employees on Client's check date and provide those checks to Client. Client will distribute checks on check date or thereafter. Checks distributed to employees before check date will not be honored and it will be Client's responsibility to pay the employees. If Client's employee fails to present a check for payment within six (6) months of check date ("Stale Check"), Paychex will refund the amount debited for the Stale Check back to Client minus any balances owed by Client and charge a Fee for the transfer of the Stale Check funds back to Client. Client will be solely responsible for remitting to its employee, or former employee, any amounts due and following any state unclaimed property laws in regards to outstanding employee funds. In the event that a Readychex check is lost, stolen, destroyed, or otherwise not able to be cashed ("Voidable Readychex") Client agrees to notify Paychex immediately and request the check to be voided. Client agrees to return any Voidable Readychex Checks for which a refund has been requested or issued if it should be ultimately found or discovered. If the voided check is cashed, negotiated, or otherwise presented for payment, and the financial institution that the Readychex check is drawn upon requires a lost/stolen check affidavit, Client agrees that Client is responsible for producing the affidavit. Readychex® is not available if Client utilizes Check Signing.

**Check Signing.** Paychex will use Client's signature to create a computer-generated facsimile that will display on each of Client's

payroll checks each payday. Check Signing is not available if Client utilizes Readychex®.

**Check Insertion.** Paychex will insert Client's signed checks into individual employee envelopes that will be sealed and returned to Client.

**Check Logo Service.** Paychex will use Client's logo to create a computer-generated facsimile that will display on each of Client's payroll checks. Client warrants that Client is the owner of any logo it authorizes Paychex to use, has full right and authority to use it on its payroll checks, and that such use does not violate any other party's rights. Check Logo Service is not available if Client utilizes Readychex®.

**Paychex® Online Reports.** Paychex will make Client's payroll reports available on a secure Internet site for access by Client.

**New Hire Reporting.** Paychex will report all new/rehired employee information that is mandated by federal and state regulations.

**HR Library.** Paychex and/or its authorized third party vendor will provide a Web-based library of human resource information, on a subscription basis, limited to one subscriber per Client ("Library"). The Library is not intended as legal advice and Client is solely responsible for its use of, or reliance on, the information contained on the Library. Paychex cannot guarantee the accuracy of the information contained on the Library.

**Labor Posters.** Paychex will provide one hardcopy state and federal labor poster kit to Client for each state in which Client pays employees ("Poster Kit") and hardcopy updates to the Poster Kit as they occur. Paychex will also provide access to Poster Kits on the Library for download by Client at no additional charge. In the event Client elects not to receive a hardcopy Poster Kit, Client will be solely responsible for downloading the Poster Kit and any updates from the Library. Client acknowledges that additional Posters may be required for (i) specific industries or (ii) clients who are federal contractors or pursuant to municipal ordinances (collectively the "Additional Posters"). Client is solely responsible for obtaining any Additional Posters which are required by local, state, or federal law and not found in the Posters provided by Paychex. Client is solely responsible for displaying all required Posters and Additional Posters as required by applicable law.

**General Ledger Report.** Paychex will produce a report containing all payroll-related general ledger data.

**Employee Access Online (EAO).** Paychex will provide Client with a self-service, Internet-based Web site ("Employee Access Online") that gives Client's employees access to their payroll information. Client acknowledges that it has full control over the level of access granted to its employees. Client agrees and acknowledges that Employee Access Online and its contents are not intended, and should not be construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees. Client further acknowledges and agrees that it is responsible for the accuracy and incorporation of any changes made to Client's data by or on behalf of Client's employees, including advising Paychex of any changes in taxability that may result. Client authorizes Paychex to

access Client's Employee Access Online to perform administrative functions as necessary to provide this Service.

**State Unemployment Insurance Service (SUIS).** Paychex will provide the following services relating to unemployment insurance: claim and appeal processing, pre-hearing preparation, analytical review of voluntary contributions, and charge statement balancing. Client agrees to complete applicable Power of Attorney and Record of Address forms where needed. For an additional Fee, Client can request and authorize Paychex to appear and represent Client by telephone at any unemployment insurance hearing for a specified employee ("SUI Representation Service"), provided the state in which the hearing is being held will allow such representation. The SUI Representation Service will be performed only for any unemployment insurance hearing regarding the specified employee. By representing Client at any unemployment insurance hearing for the specified employee, Paychex is not acting as Client's attorney nor will Paychex provide Client legal advice. Paychex does not guarantee the outcome of the hearing. Paychex expressly reserves the right to decline the Client's request to represent Client at the unemployment insurance hearing. Client expressly agrees that the SUI Representation Service will be performed pursuant, and subject to, the terms of the Agreement.

**Workers' Compensation Report Service.** Paychex will provide Client a monthly report with the calculated workers' compensation premium amounts consisting of the payroll wages and workers' compensation premiums in each class code for each payroll processed by Client ("Report"). Additional Reports may be purchased for an additional fee. The Service does not include the sale of workers' compensation insurance coverage ("Coverage") and is not proof of Coverage. Client is solely responsible for obtaining and maintaining any required Coverage.

**Workers' Compensation Payment Service.** Paychex and/or Paychex Insurance Agency, Inc. will perform workers' compensation payment services for Client as set forth in the Paychex Workers' Compensation Payment Service Agreement. Availability of the Workers' Compensation Payment Service is dependent on insurance carrier selection and/or carrier underwriting requirements. Client must execute a separate Paychex Workers' Compensation Payment Service Agreement in order to receive the Workers' Compensation Payment Service.

**General Ledger Reporting Service.** Paychex will provide reporting of Client's payroll-related general ledger and make it available for Client from a secure Internet site for downloading into their specific third-party accounting software package.

**Premium Only Plan (POP).** Paychex will act as Plan Service Provider for Client's POP. Paychex will provide Client with the following Plan installation documentation: (i) Basic Plan Document; (ii) Adoption Agreement; and (iii) Summary Plan Description. Client acknowledges that Client is responsible for (i) reviewing and signing the Adoption Agreement setting forth the terms and conditions of the Plan; and (ii) distributing the Summary Plan Description to Plan participants. Paychex will perform the calculations for the Key Employee Concentration Test. Client is solely responsible for all other testing. If Client has a Health Savings Account (HSA), the pretax salary reductions for

Client's HSA will not be incorporated into the compliance testing results. Client will be solely responsible for any aggregate testing. Client acknowledges that if the Plan fails the testing as outlined above, the Client is responsible for correcting the failure and bringing the Plan into compliance with the applicable requirements as defined in section 125 of the Internal Revenue Code.

**Paychex® Employee Screening Services.** Client acknowledges that the Paychex Employee Screening Services are performed by a third party vendor of Paychex. Client agrees to remit payment directly to Paychex. Client will be eligible for such program so long as Client: (i) remains a Client of Paychex; (ii) complies with the terms of this Agreement; and (iii) executes and complies with the terms of any agreement the third party vendor shall require.

**Time Off Accrual Service (TOA).**  Paychex will provide a tracking and reporting service for employee-accrued benefits, such as employee-paid time off, based on Client Information provided by Client each pay period. Paychex will also display up-to-date paid-time-off totals on each of Client's payroll checks each payday.

**Garnishment Payment Service.** Paychex will process EFT transactions, one banking day prior to Client's check date, for Client's employees' garnished wages as are necessary to remit to the appropriate entities. Client will provide Paychex with a garnishment order for each employee for whom wages are to be garnished. Paychex will hold garnished wages in a separate account established by Paychex until such time as the amounts are due. Client remains solely responsible for the correct calculation of the amount to garnish from its employees' wages.

**COBRA Administration.** Paychex will perform certain federal COBRA and state continuation administrative functions for medical, dental, vision, or prescription drug coverage plans ("Eligible Plans") on Client's behalf ("COBRA Administration"). Client will notify Paychex when an employee is (i) no longer on its payroll; (ii) terminated from coverage under the Eligible Plan; or (iii) receiving a reduced level of health care coverage under the Eligible Plan; and Client will identify Eligible Plans of the employee to Paychex ("Required Notifications"). Paychex will assist Client in determining if a matter is a qualifying event once Client provides Paychex with the Required Notifications and will begin COBRA Administration on Client's behalf, if required. If the qualified beneficiary subsequently elects COBRA coverage, Client shall be solely responsible for submitting the premium for the qualified beneficiary directly to the Eligible Plan insurance carrier. The qualified beneficiary will be required to pay the monthly premium directly to Paychex, and Paychex will reimburse Client the premium collected from the qualified beneficiary less an administrative Fee. Paychex receives bank credits and/or earnings ("Earnings") from the premiums received. The amount of Earnings received by Paychex will fluctuate based on the average monthly balance of the premiums multiplied by the thirty (30)-day British London Interbank Offered Rate minus forty (40) basis points. Client acknowledges that Paychex may retain such Earnings as additional compensation for COBRA Administration under this Agreement. In the absence of Earnings, Client acknowledges that the other Fees paid to Paychex under this Agreement would be greater.

02/13/2012 21:19 FAX 713+664+4905          Bormaster                      ☑002

## Step 1: Read and complete this form.

**Paychex Payroll Processing Services Agreement**

Company Name  INC Nautical LP
Office/Client Number ▮▮▮▮▮▮▮▮▮▮▮▮
Federal ID Number _ _ _ _ _ _ _ _ _ _

This Paychex® Payroll Processing Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated in accordance with its provisions.

1. **Services.** Client employs Paychex to provide the Payroll Processing services, and any optional services selected by Client below (collectively "Services"). Services are described in the Product Terms and Conditions section of this Agreement. Paychex will not commence any of the Services until Paychex receives all documents necessary to begin each of the Services and notifies Client of the date Paychex will commence each of the Services ("Service Effective Date"). Client acknowledges that each of the Services may have separate Service Effective Dates. Until the Service Effective Date, Client will continue to provide for itself the Services requested of Paychex. Paychex assumes no responsibility for Services prior to the Service Effective Date or for Services declined by Client.

**Payroll Processing Services.** The Payroll Processing Services includes the Services set forth below as described in the Product Terms and Conditions section of this Agreement.

- Payroll Processing
- Taxpay®
- Direct Deposit
- Readychex® ☐ -OR- Check Signing ☐ (check one)
- Check Insertion
- Check Logo Service

- Paychex® Online Reports
- New Hire Reporting
- HR Library
- Labor Posters
- General Ledger Report
- Employee Access Online (EAO)

**Declined Payroll Processing Services.** Client declines the Services initialed below. Client is solely responsible for performing the declined Services.

_____ Initial here to DECLINE Taxpay®

_____ Initial here to DECLINE Direct Deposit

**Optional Services.** Initial below to select additional Services. The optional Services are not part of the Payroll Processing Services and Client acknowledges it must pay separately for each selected Service. The optional Services are described in the Product Terms and Conditions section of this Agreement.

| | | |
|---|---|---|
| ___ State Unemployment Insurance Service (SUIS) | ___ General Ledger Reporting Service | ___ Time Off Accrual Service (TOA) |
| ___ Workers' Compensation Report Service | X SB Premium Only Plan (POP) | ___ Garnishment Payment Service |
| ___ Workers' Compensation Payment Service | ___ Paychex® Employee Screening Services | ___ COBRA Administration |

Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services, nor is Paychex a fiduciary of Client or the employer or joint employer of Client's employees. Paychex will not be responsible for Client's compliance with, nor will Paychex provide legal or other financial advice to Client, with respect to federal, state, or local statutes, regulations, or ordinances, including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

Client understands that this Agreement (Rev. 4/11) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions set forth in sections 1-24 of this Agreement.

Authorized Officer's Name  Scott Bormaster        Title  Partner

Authorized Officer's Signature  X  [signature]        Date  2-13-12

Page 1 of 6                                                        Rev. 4-11


EXHIBIT
A-2

2. **Client Contacts.** Client will designate payroll contacts that will provide Paychex with information and directives necessary for Paychex to perform the Services (collectively "Client Information"). Client is responsible for the accuracy of any Client Information provided by payroll contacts and/or Client.

3. **Client Information.** Client will execute and/or provide all documentation that Paychex requires to perform its responsibilities under the Agreement including, where necessary, taking all corporate action. Client acknowledges that Paychex may be required to obtain documents necessary to verify the identity of Client pursuant to applicable federal and/or state statutes or regulations. Client will provide Paychex with all necessary Client Information pertaining to Client's employees at least two (2) banking days prior to a payroll check date. **Client acknowledges that Client is responsible for any delayed remittance of wages, taxes, and garnishments, and additional processing fees incurred as a result of its failure to provide Client Information at least two (2) banking days prior to a payroll check date. Paychex shall not be required to obtain authorization from Client to act on Client Information.**

4. **Reliance on Client Information.** Paychex will not be responsible for errors that result from Paychex' reliance on Client Information.

5. **Review Reports.** Client will review all reports and documents provided or made available by Paychex and inform Paychex of any inaccuracies within three (3) business days of receipt or availability.

6. **Software Licenses.** Client has received, or may receive, certain computer software relating to Services (collectively "Software"). Client agrees that in the event that it does not accept all of the terms and conditions of any and all Paychex Software, and/or third-party Software, and any and all applicable license agreements provided to Client now or in the future, Paychex will not be obligated to perform Services dependent upon the Software.

7. **Remit Reimbursement Amounts.** Client agrees to remit funds to Paychex representing the amount due to pay Client's employees, remit taxes, or pay garnishments ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

8. **Payment of Fees.** Client will pay all fees, including, but not limited to, fees for all Paychex Services each pay period through an EFT or such other method as required by Paychex when due (collectively "Fees"). Minimum monthly Fees are due in the event Client fails to process a payroll or whose payroll fails to meet the minimum monthly charge during the month. Fees include minimum monthly, insufficient funds, and premium processing fees. Paychex' Fees are subject to change upon thirty (30) days written notification to Client. Paychex may, in its sole discretion, require a security deposit from Client, and Client waives any right to interest that may accrue on any amounts, including, but not limited to, Reimbursement Amounts, Fees, and security deposits received by Paychex.

9. **Electronic Funds Transfer.** If Paychex requires payment of Fees or Reimbursement Amounts (collectively "Amounts Due") through an EFT, Client (i) will execute all documentation needed by Paychex to originate EFT transactions and to verify availability of funds in Client's bank account; (ii) agrees that the funds representing the Amounts Due will be on deposit in Client's bank account in collectible form and in sufficient amount on the day Paychex' EFT is to be presented ("Funding Deadline"); and (iii) authorizes Paychex to collect all Amounts Due from Client's bank account on the Funding Deadline. All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA"). Client agrees (i) to follow NACHA, as they are amended from time to time and assumes the responsibilities of an initiator of EFTs; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT. Client further agrees that it will notify Paychex, pursuant to applicable NACHA and federal regulations, if funding for Client's payroll is received from a foreign financial agency and of any employees with non-U.S. addresses.

10. **Payment by Wire Transfer or Other Method.** If Paychex requires payment of Amounts Due by a wire transfer or other method, Client agrees to provide Paychex with all information necessary to confirm receipt of the payment prior to the Funding Deadline.

11. **Insufficient or Nonconfirmed Funds.** If sufficient funds are not available on the Funding Deadline, Paychex may take such action to collect Amounts Due including, but not limited to, reissuance of the EFT and assessing insufficient fund Fees. **Client acknowledges that Client is responsible for any delay in remittance of wages, garnishments, or taxes if Paychex is unable to confirm receipt of funds prior to the Funding Deadline.**

12. **Client's Default.** In the event of a Client default, Paychex may, at its sole option, terminate the Agreement or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances or overpayments made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due including, but not limited to, attorneys' fees (including in-house counsel), court, and arbitration costs.

13. **Refund/Adjustment/Overpayment.** Client agrees that Paychex may apply any balances it is holding for Client to Amounts Due owed to Paychex or its affiliates. In the event Paychex remits an overpayment of payroll taxes, Paychex may, at its sole discretion, advance funds to Client. In the event Paychex advances overpayment funds to Client then Client agrees that it will reimburse Paychex for the overpayment within the sooner of five (5) days of (i) receiving the overpayment amount from the taxing authority; or (ii) being notified that the overpayment amount would be applied to an outstanding tax liability of Client; or (iii) the Agreement being terminated by either party.

14. **Termination.** Except as otherwise provided, either party may terminate the Agreement upon thirty (30) days prior written

notice. Paychex may immediately terminate the Agreement, or a portion thereof, if: (i) Client becomes subject to receivership, determines that a material adverse change has occurred in the financial condition of Client; (iii) Client fails to have sufficient funds on the Funding Deadline; or (iv) Paychex determines, in its sole discretion, that any federal, state, or local legislation, regulatory action, or judicial decision adversely affects its interests under the Agreement. Termination of the Agreement will not relieve Client of any obligations set forth herein this Agreement, including, but not limited to, its payment obligations.

15. **Limit of Liability.** Paychex' sole liability and Client's sole remedy for Paychex' breach of the Agreement will be: (i) for Paychex to remit to the appropriate payee the funds received from Client; and/or (ii) for Paychex to reimburse Client or its employees for any interest or penalties assessed by taxing authorities as a direct result of Paychex' breach of the Agreement. Paychex can only be held liable for breach of the Agreement and will not be held liable for (i) any negligent act or omission by Paychex; (ii) the negligence of any other person or entity, including, but not limited to, Client and its employees or agents, or any person or entity that provides services in connection with or as a result of Paychex' performance of its obligations under the Agreement; (iii) any loss, claim, or expense arising from any information provided or modified by Client, including, but not limited to, any Client forms, handbooks, manuals, and job descriptions; or (iv) Client's breach of NACHA. **Paychex will, under no circumstances, be liable for any special, indirect, incidental, consequential, or punitive damages, including lost profits incurred by Client pursuant to this Agreement or by the transactions contemplated by it, however caused, on any theory of liability (including contract, tort, or warranty), or as a result of Paychex' exercise of its rights under the Agreement, even if Paychex has been advised of the possibility of such damages.**

16. **Copyright.** Paychex owns all rights, title, and interest, including, but not limited to, copyright, patent, trade secret, and all other intellectual property rights, in the Software and any changes, modifications, or corrections to the Software. If Client is ever held or deemed to be the owner of any copyright rights in the Software or any changes, modifications, or corrections to the Software, Client hereby irrevocably assigns to Paychex all such rights, title, and interest. Client agrees to execute all documents necessary to implement and confirm the letter and intent of this section. Client warrants to Paychex that it (i) has title or is authorized to use any symbol, logo, or mark uploaded by Client or Client's agents or printed on Client's checks (collectively "Client Material"); and (ii) has full right and authority to use Client Material, and such use does not violate any other party's rights.

17. **Confidentiality of Software.** Client acknowledges that the Software contains valuable trade secrets and confidential information owned by Paychex or third parties (collectively "Confidential Information"). Client agrees that Client, its employees, and its agents will not, directly or indirectly: (i) sell, lease, assign, sublicense, or otherwise transfer; (ii) duplicate, reproduce, or copy; (iii) disclose, divulge, or otherwise make

bankruptcy, or is insolvent; (ii) Paychex, in its sole discretion, available to any third party; (iv) use, except as authorized by this Agreement; or (v) decompile, disassemble, or otherwise analyze for reverse engineering purposes the Software or Confidential Information. Client will take appropriate action with Client's employees and agents to satisfy its obligations under this Agreement with respect to the use, protection, and security of Confidential Information. Client will notify Paychex immediately of any unauthorized use or disclosure of Confidential Information and will cooperate in remedying such unauthorized use or disclosure.

18. **Client Confidential Information.** "Client Confidential Information" will mean the name, social security number, date of birth, address, bank, and wage information of Client and Client's employees provided to Paychex by Client. Paychex will use reasonable care to prevent the disclosure of such Client Confidential Information to any unauthorized person or entity. Paychex may disclose Client Confidential Information to its employees, affiliates, subsidiaries, agents, and contractors to: (i) perform or offer Services; (ii) offer additional products or services; (iii) perform analysis to determine Client's qualification to receive future services; and (iv) collect Amounts Due and may disclose Client's payment experiences with Paychex to credit reporting agencies and supply vendor references on Client's behalf. Paychex may also disclose Client Confidential Information (i) to its attorneys, accountants, and auditors; and (ii) pursuant to federal, state, or local law, regulation, court order, legal process, or governmental investigation. The obligations set forth in this section will not apply to any Client Confidential Information that: (i) Client has agreed is free of any nondisclosure obligations; (ii) at the time of disclosure was free of any nondisclosure obligations; (iii) is independently developed by Paychex or that Paychex lawfully received, free of any nondisclosure obligations, from a third party having the right to furnish such Client Confidential Information; or (iv) is or becomes available to the public without any breach of this Agreement or unauthorized disclosure.

19. **Indemnification.** Client will indemnify, defend, and hold Paychex and its respective officers, directors, and employees harmless from any and all claims, costs, attorneys' fees (including in-house counsel fees), and expenses resulting from or arising in connection with (i) a Client default; (ii) the use, misuse, reproduction, modification, or unauthorized distribution of Software; (iii) Client's breach of NACHA; or (iv) Client's breach of any warranty set forth in the Agreement.

20. **Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client shall be governed exclusively by the laws of the State of New York without regard to, or application of, its conflict of laws, rules, and principles, except for the arbitration agreement contained herein which shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). **Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration**

**Association.** Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement. A separate neutral arbitrator must be selected and appointed for each dispute. Any dispute arising under the Agreement will be brought within two (2) years of when the claim accrued. The arbitrator will not be authorized to award exemplary or punitive damages, or any damages excluded in the Limit of Liability provision. The parties agree that the prevailing party in arbitration, and any subsequent judicial proceeding to enforce an arbitration award, will be awarded costs and attorneys' fees (including in-house counsel fees) and that an arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. The parties will not be permitted to bring, or participate in, and the arbitrator will not have any authority or jurisdiction to hear or decide, any claims brought as any type of purported class action, coordinated action, aggregated action, or similar action or proceeding. Each party must only bring claims against each other in their individual capacity. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex. Client waives any jurisdictional defenses and submits to the exclusive jurisdiction of the New York courts.

21. **Assignability.** The Agreement may not be assigned by Client to any third parties, other than successors, without the prior written consent of Paychex. Any assignment made without such consent will be null and void.

22. **Signature.** The parties agree that Client's signature on this Agreement may be transmitted to Paychex electronically or by facsimile. The parties further agree that such signature will have the same force and effect as if the original signature had been provided and received.

23. **Miscellaneous.** The Agreement, along with any exhibits, addendums, schedules, and amendments, contains the entire understanding of the parties and supersedes all previous understandings and agreements between the parties for the Services provided, whether oral or written. Neither party will be responsible for any delay or failure to perform obligations specified in the Agreement due to causes beyond the party's reasonable control. Client acknowledges that there have been no representations or warranties made by Paychex or Client that are not set forth in the Agreement. Paychex may modify any term of the Agreement upon thirty (30) days written notice to Client of such change and the effective date thereof. Client will be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to Paychex prior to the effective date of the change and pursuant to the Termination provisions. If any provision of the Agreement or any portion thereof is held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of the Agreement will    not in any way be affected or impaired. Sections 1-23 will survive the termination of the Agreement.

24. **Product Terms and Conditions.** Client acknowledges that it will   receive only the Services selected on Page 1 of this Agreement.

**Payroll Processing.** Paychex will process Client's payroll based solely on Client Information provided by Client, prepare payroll checks drawn on Client's bank account or as otherwise directed by Client in this Agreement, prepare payroll reports for each payroll processed by Client, and provide the payroll reports, checks, and/or payroll check stubs to Client for review and distribution. Paychex will prepare payroll tax returns for taxes identified on the Cash Requirements report and deliver to Client for the Client to review, sign, and file. Paychex will not be responsible for the remittance of payroll taxes, or other taxes, or for the filing of tax returns for Clients who elect not to receive the Taxpay® service.

**Taxpay®.** On or before Client's check date, Paychex will (i) process Electronic Funds Transfer (EFT) transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified on the Cash Requirements report; (ii) hold such amounts in a separate account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes which Paychex did not collect from Client. **SUI Support Service:** Paychex will provide Client with telephone support with state unemployment insurance claims, benefit charge questions, and pre-hearing preparation.

**Direct Deposit.** Paychex will process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds will be deposited to employee accounts as specified. Certain accounts may have restrictions on deposits and withdrawals. Paychex is not responsible for determining whether an account is suitable for direct deposit of requested EFT transactions.

**Readychex®.** Paychex will (i) process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees; (ii) hold such amounts in an account established by Paychex until Client's check date; and (iii) draw checks payable to Client's employees on Client's check date and provide those checks to Client. Client will distribute checks on check date or thereafter. Checks distributed to employees before check date will not be honored and it will be Client's responsibility to pay the employees. If Client's employee fails to present a check for payment within six (6) months of check date ("Stale Check"), Paychex will refund the amount debited for the Stale Check back to Client minus any balances owed by Client and charge a Fee for the transfer of the Stale Check funds back to Client. Client will be solely responsible for remitting to its employee, or former employee, any amounts due and following any state unclaimed property laws in regards to outstanding employee funds. In the event that a Readychex check is lost, stolen, destroyed, or otherwise not able to be cashed ("Voidable Readychex") Client agrees to notify Paychex immediately and request the check to be voided. Client agrees to return any Voidable Readychex Checks for which a refund has been

requested or issued if it should be ultimately found or discovered. If the voided check is cashed, negotiated, or otherwise presented for payment, and the financial institution that the Readychek check is drawn upon requires a lost/stolen check affidavit, Client agrees that Client is responsible for producing the affidavit. Readychek® is not available if Client utilizes Check Signing.

**Check Signing.** Paychex will use Client's signature to create a computer-generated facsimile that will display on each of Client's payroll checks each payday. Check Signing is not available if Client utilizes Readychek®.

**Check Insertion.** Paychex will insert Client's signed checks into individual employee envelopes that will be sealed and returned to Client.

**Check Logo Service.** Paychex will use Client's logo to create a computer-generated facsimile that will display on each of Client's payroll checks. Client warrants that Client is the owner of any logo it authorizes Paychex to use, has full right and authority to use it on its payroll checks, and that such use does not violate any other party's rights. Check Logo Service is not available if Client utilizes Readychek®.

**Paychex® Online Reports.** Paychex will make Client's payroll reports available on a secure Internet site for access by Client.

**New Hire Reporting.** Paychex will report all new/rehired employee information that is mandated by federal and state regulations.

**HR Library.** Paychex and/or its authorized third party vendor will provide a Web-based library of human resource information, on a subscription basis, limited to one subscriber per Client ("Library"). The Library is not intended as legal advice and Client is solely responsible for its use of, or reliance on, the information contained on the Library. Paychex cannot guarantee the accuracy of the information contained on the Library.

**Labor Posters.** Paychex will provide one hardcopy state and federal labor poster kit to Client for each state in which Client pays employees ("Poster Kit") and hardcopy updates to the Poster Kit as they occur. Paychex will also provide access to Poster Kits on the Library for download by Client at no additional charge. In the event Client elects not to receive a hardcopy Poster Kit, Client will be solely responsible for downloading the Poster Kit and any updates from the Library. Client acknowledges that additional Posters may be required for (i) specific industries or (ii) clients who are federal contractors or pursuant to municipal ordinances (collectively the "Additional Posters"). Client is solely responsible for obtaining any Additional Posters which are required by local, state, or federal law and not found in the Posters provided by Paychex. Client is solely responsible for displaying all required Posters and Additional Posters as required by applicable law.

**General Ledger Report.** Paychex will produce a report containing all payroll-related general ledger data.

**Employee Access Online (EAO).** Paychex will provide Client with a self-service, Internet-based Web site ("Employee Access Online") that gives Client's employees access to their payroll information. Client acknowledges that it has full control over the level of access granted to its employees. Client agrees and acknowledges that Employee Access Online and its contents are not intended, and should not be construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees. Client further acknowledges and agrees that it is responsible for the accuracy and incorporation of any changes made to Client's data by or on behalf of Client's employees, including advising Paychex of any changes in taxability that may result. Client authorizes Paychex to access Client's Employee Access Online to perform administrative functions as necessary to provide this Service.

**State Unemployment Insurance Service (SUIS).** Paychex will provide the following services relating to unemployment insurance: claim and appeal processing, pre-hearing preparation, analytical review of voluntary contributions, and charge statement balancing. Client agrees to complete applicable Power of Attorney and Record of Address forms where needed. For an additional Fee, Client can request and authorize Paychex to appear and represent Client by telephone at any unemployment insurance hearing for a specified employee ("SUI Representation Service"), provided the state in which the hearing is being held will allow such representation. The SUI Representation Service will be performed only for any unemployment insurance hearing regarding the specified employee. By representing Client at any unemployment insurance hearing for the specified employee, Paychex is not acting as Client's attorney nor will Paychex provide Client legal advice. Paychex does not guarantee the outcome of the hearing. Paychex expressly reserves the right to decline the Client's request to represent Client at the unemployment insurance hearing. Client expressly agrees that the SUI Representation Service will be performed pursuant, and subject to, the terms of the Agreement.

**Workers' Compensation Report Service.** Paychex will provide Client a monthly report with the calculated workers' compensation premium amounts consisting of the payroll wages and workers' compensation premiums in each class code for each payroll processed by Client ("Report"). Additional Reports may be purchased for an additional fee. The Service does not include the sale of workers' compensation insurance coverage ("Coverage") and is not proof of Coverage. Client is solely responsible for obtaining and maintaining any required Coverage.

**Workers' Compensation Payment Service.** Paychex and/or Paychex Insurance Agency, Inc. will perform workers' compensation payment services for Client as set forth in the Paychex Workers' Compensation Payment Service Agreement. Availability of the Workers' Compensation Payment Service is dependent on insurance carrier selection and/or carrier underwriting requirements. Client must execute a separate Paychex Workers' Compensation Payment Service Agreement in order to receive the Workers' Compensation Payment Service.

Rev. 4/11

**General Ledger Reporting Service.** Paychex will provide reporting of Client's payroll-related general ledger and make it available for Client from a secure Internet site for downloading into their specific third-party accounting software package.

**Premium Only Plan (POP).** Paychex will act as Plan Service Provider for Client's POP. Paychex will provide Client with the following Plan installation documentation: (i) Basic Plan Document; (ii) Adoption Agreement; and (iii) Summary Plan Description. Client acknowledges that Client is responsible for (i) reviewing and signing the Adoption Agreement setting forth the terms and conditions of the Plan; and (ii) distributing the Summary Plan Description to Plan participants. Paychex will perform the calculations for the Key Employee Concentration Test. Client is solely responsible for all other testing. If Client has a Health Savings Account (HSA), the pretax salary reductions for Client's HSA will not be incorporated into the compliance testing results. Client will be solely responsible for any aggregate testing. Client acknowledges that if the Plan fails the testing as outlined above, the Client is responsible for correcting the failure and bringing the Plan into compliance with the applicable requirements as defined in section 125 of the Internal Revenue Code.

**Paychex® Employee Screening Services.** Client acknowledges that the Paychex Employee Screening Services are performed by a third party vendor of Paychex. Client agrees to remit payment directly to Paychex. Client will be eligible for such program so long as Client: (i) remains a Client of Paychex; (ii) complies with the terms of this Agreement; and (iii) executes and complies with the terms of any agreement the third party vendor shall require.

**Time Off Accrual Service (TOA).** Paychex will provide a tracking and reporting service for employee-accrued benefits, such as employee-paid time off, based on Client Information provided by Client each pay period. Paychex will also display up-to-date paid-time-off totals on each of Client's payroll checks each payday.

**Garnishment Payment Service.** Paychex will process EFT transactions, one banking day prior to Client's check date, for Client's employees' garnished wages as are necessary to remit to the appropriate entities. Client will provide Paychex with a garnishment order for each employee for whom wages are to be garnished. Paychex will hold garnished wages in a separate account established by Paychex until such time as the amounts are due. Client remains solely responsible for the correct calculation of the amount to garnish from its employees' wages.

**COBRA Administration.** Paychex will perform certain federal COBRA and state continuation administrative functions for medical, dental, vision, or prescription drug coverage plans ("Eligible Plans") on Client's behalf ("COBRA Administration"). Client will notify Paychex when an employee is (i) no longer on its payroll; (ii) terminated from coverage under the Eligible Plan; or (iii) receiving a reduced level of health care coverage under the Eligible Plan; and Client will identify Eligible Plans of the employee to Paychex ("Required Notifications"). Paychex will assist Client in determining if a matter is a qualifying event once Client provides Paychex with the Required Notifications and will begin COBRA Administration on Client's behalf, if required. If the qualified beneficiary subsequently elects COBRA coverage, Client shall be solely responsible for submitting the premium for the qualified beneficiary directly to the Eligible Plan insurance carrier. The qualified beneficiary will be required to pay the monthly premium directly to Paychex, and Paychex will reimburse Client the premium collected from the qualified beneficiary less an administrative Fee. Paychex receives bank credits and/or earnings ("Earnings") from the premiums received. The amount of Earnings received by Paychex will fluctuate based on the average monthly balance of the premiums multiplied by the thirty (30)-day British London Interbank Offered Rate minus forty (40) basis points. Client acknowledges that Paychex may retain such Earnings as additional compensation for COBRA Administration under this Agreement. In the absence of Earnings, Client acknowledges that the other Fees paid to Paychex under this Agreement would be greater.